**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MAMUN RASHID, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

<div style="margin-left:3em">Plaintiff,</div>

<div style="margin-left:1em">v.</div>

VIRGIN HOTELS OF NEW YORK LLC,
    d/b/a VIRGIN HOTELS, and
VIRGIN HOTELS NORTH AMERICA, LLC,
    d/b/a VIRGIN HOTELS,

<div style="margin-left:3em">Defendants.</div>

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

---

Plaintiff MAMUN RASHID ("Plaintiff RASHID") (the "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, VIRGIN HOTELS NEW YORK LLC d/b/a VIRGIN HOTELS and VIRGIN HOTELS NORTH AMERICA, LLC d/b/a VIRGIN HOTELS, (the "Corporate Defendant"), and state as follows:

<div style="text-align:center">1</div>

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving, (2) unpaid wages due to an invalid meal credit, (3) unpaid tips due to illegally retained gratuities, (4) unpaid tips due to an invalid tip pool, (5) liquidated damages, and (6) attorneys' fees and costs.

2.      Plaintiff alleges, pursuant to the New York Labor Law ("NYLL"), that he and similarly situated individuals are entitled to recover: (1) unpaid wages, including overtime, due to timeshaving, (2) unpaid wages due to an invalid meal credit, (3) unpaid tips due to disgorgement of illegally retained gratuities, (4) unpaid tips due to an invalid tip pool, (5) unpaid call-in pay premiums, (6) liquidated damages, (7) statutory penalties due to WTPA violations, and (8) attorneys' fees and costs.

3.      Plaintiff further alleges that he was deprived of his statutory rights as a result of Defendants' unlawful discrimination, pursuant to the New York State Human Rights Law ("NYSHRL") Executive Law §§ 296 *et seq.*, New York City Human Rights Law ("NYCHRL") Administrative Code of the City of New York §§ 8-107 *et seq.*, and is therefore entitled to additionally recover from Defendants: (1) back wages, (2) compensatory damages for emotional distress, (3) punitive damages, and (4) attorneys' fees and costs.

4.      Plaintiff further alleges that he was deprived of his statutory rights as a result of Defendants' unlawful retaliation against him, pursuant to the FLSA and NYLL and is therefore entitled to recover from Defendants: (1) back wages, (2) punitive damages, (3) compensatory damages, and (4) attorneys' fees and costs.

2

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

**PARTIES**

7.      Plaintiff RASHID, for all relevant time periods, was a resident of Hollis, New York. He was previously employed by Defendants as a server.

8.      Corporate Defendant VIRGIN HOTELS NEW YORK LLC is a foreign limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 1227 Broadway, New York, NY 10001, and an address for service of process at One Commerce Plaza, 99 Washington Avenue, Suite 805-A, Albany, NY 12210.

9.      Corporate Defendants VIRGIN HOTEL NORTH AMERICA, LLC is a foreign limited liability company organized under the laws of the State of Delaware, with a principal place of business located at 3390 Mary Street, Suite 218, Miami, FL 33133, and an address for service of process at 131 Continental Drive, Suite 301, Newark, DE 19713.

10.     At all relevant times, each of the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

11.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

12.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all tipped non-exempt employees (including servers,

bussers, bartenders, barbacks, runners, delivery persons, dishwashers, chefs, line-cooks, room service attendants, among others) employed by Defendants at Defendants' Virgin Hotels located at 1227 Broadway, New York, NY 10001 on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

13.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs (i) all hours worked, due to time-shaving, and (ii) all wages owed, due to illegal meal credit. FLSA Collective Plaintiffs further includes a subclass of tipped employees ("Tipped FLSA Collective Plaintiffs"). Tipped FLSA Collective Plaintiffs suffered from Defendants' policy of unlawful withholding gratuities through direct retention of mandatory gratuity fees for events and parties.

14.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

<div align="center"><strong><u>RULE 23 CLASS ALLEGATIONS</u></strong></div>

15.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons (including servers, bussers, bartenders, barbacks, runners, delivery persons, dishwashers, chefs, line-cooks, room service attendants,

<div align="center">4</div>

among others)  employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or Class Members).

16.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

17.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass" or "Subclass") who also number more than forty (40). Plaintiff is a member of the Class and Subclass he seeks to represent.

18.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. Plaintiff and all the Class Members suffered from Defendants' failure to pay proper wages due to Defendants' (i) timeshaving practices, due to interrupted meal breaks, (ii) improper deduction of a meal credit, which they did not meet the requirements to take, (iii) failure to pay call-in pay premiums for shifts lasting less than three (3) hours, and (iv) failure to provide proper wage notices and wage statements. Plaintiff and Subclass suffered from

Defendants' failure to pay proper wages due to Defendants' unlawful withholding of gratuities through retention of mandatory gratuity fees for parties and events.

19. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment.

20. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment permits a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

21.  Defendants and other employers throughout the country violate state wage and hour laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

22.  There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

    a)  Whether Defendants employed Plaintiff and the Class within the meaning of the relevant state wage and hour laws;

    b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

    c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

    d)  Whether Defendants subjected Plaintiff and Subclass Members to a valid tip pool;

    e)  Whether Defendants accurately tracked the amounts of tips and gratuities earned each day and maintained records thereof;

    f)  Whether Defendants paid Plaintiff and Class Members their owed call-in pay premiums;

g) Whether Defendants provided Plaintiff and Class Members with proper meals, per requirements of the New York Labor Law;

h) Whether Defendants have been previously named in a similar civil action;

i) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law and other applicable state laws; and

j) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law and other applicable state laws.

## STATEMENT OF FACTS

### i.    Plaintiff's Employment Backgrounds

23.    In or around February 2023, Plaintiff RASHID was hired by Defendants to work as a server at Defendants' Everdene Restaurant and Bar, located in Virgin Hotels New York City at 1227 Broadway, New York, NY 10001. Plaintiff worked for Defendants until October 4, 2024, when he was terminated.

24.    Plaintiff worked five (5) days a week, Mondays through Fridays. Shifts would range from 4:00 p.m. to 1:00 a.m., 2:30 p.m. to 12:00 a.m., and 3:30 p.m. to 11:30 p.m.

25.    Throughout his entire employment, Plaintiff was paid by Defendants at an hourly rate of $16.69. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar rates.

### ii.    Plaintiff's Tip Retention Claims

26.    Defendants offer access to event spaces at each hotel for a variety of functions, including, but not limited to weddings, conferences, business meetings, fundraisers, and public

8

ceremonies. Each location uses the same contract, promulgated by Defendants to all of their subsidiaries. The contract includes, among other things, a mandatory gratuity charge for events. There is no language in the contract which indicates that the gratuity would in any way be used to pay non-service staff, nor any language indicating that the gratuity was actually an administrative or service fee.

27.    Despite the contract clearly indicating that the relevant charge was a gratuity, Plaintiff, Tipped FLSA Collective Plaintiffs, and Subclass Members were only ever paid a portion of the total gratuity to which they were entitled. Defendants pocketed a large portion of the gratuity fee and only remitted a small remainder to the lawful recipients—Plaintiff and other service employees.

28.    From the start of his employment, Plaintiff felt that he was being underpaid for their tips from parties and events. Although multiple employees made requests to see tip sheets and/or event contracts, Defendants never provided tipped employees with access to the total amount of gratuities earned from each event. However, certain events led Plaintiff to understand that they were being grossly underpaid their event gratuities.

29.    Additionally, during events and parties, Defendants improperly included non-tipped workers in the gratuity pool. During events, Defendants regularly re-tasked a number of untipped employees to work in non-service positions at the event. This included assigning employees such as hosts, hostesses, cleaning staff, and general hotel staff to help set-up and break down furniture and decorations, clean up the event space, act as security, and load and unload items received from clients for the events. Despite the fact that none of these employees engaged in tipped activities and duties, Defendants included them in the (already reduced) gratuity pool.

9

30. Defendants' practices and policies with respect to parties and events were well known across Defendants' locations. Defendants knowingly and willfully retained a portion of Plaintiff's, Tipped FLSA Collective Plaintiffs', and Subclass Members' gratuities.

### iii. Timeshaving Claims

31. Throughout Plaintiff's employment, he was routinely timeshaved by Defendants. Defendants required each employee who worked six hour or more to take a thirty-minute lunch break, which they would clock out for. Plaintiff would often be interrupted during his lunch break and required to return to work. When that happened, Defendants still deducted a full half-hour from his daily time. FLSA Collective Plaintiffs and Class Members similarly were interrupted during lunch breaks and required to come back to work and similarly were not paid for the portion of their break during which they worked.

32. Defendants knowingly and willfully timeshaved Plaintiff, FLSA Collective Plaintiffs, and Class Members by not paying them during lunch breaks where they were required to return to work early.

### iv. Invalid Tip Pool and Illegal Retention of Gratuities Claims

33. Throughout their employments, Plaintiff was subjected to Defendants' invalid tip pool and illegal retention of gratuities, in violation of the FLSA and the NYLL.

34. At all relevant times, Defendants utilized a tip pool whereby non-tipped employees, who did not provide tipped services to Defendants' clients, were included. These non-tipped employees included hostesses, among others.

35. Furthermore, while Defendants tracked credit card tips on their tip sheet, they did not track cash tips. Instead, cash tips were all put in the same box to be distributed by management. However, the tips only appeared on Plaintiff's checks and it was never clear whether the cash tips

10

they received were the appropriate amount, since no one but management knew the total at the end of each shift. Suspecting that he was being underpaid their cash tips, Plaintiff and his coworkers coordinated to try to keep track of the total each shift and the total paid out and discovered that Defendants were indeed retaining a portion of the total cash tips each night.

36.     Plaintiff's and Subclass Members' tips and gratuities are covered under the meaning of § 196-d of the NYLL. In New York, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities and other surcharges or fees, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196-d.

37.     Further, Defendants failed to provide customers with an explicit written statement that any portions of surcharges, service fees, and gratuities left on tables would be retained by Defendants' management. Defendants' failure to provide notice of their retention of tips from tipped employees was inadequate to satisfy the requirements of *Sarmiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008).

38.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of unlawfully retaining tips from Plaintiff, Tipped FLSA Collective Plaintiffs, and Subclass Members, in violation of the FLSA and the NYLL.

**v.     Invalid Meal Credit Claims**

39.     Throughout Plaintiff's employment, Defendants deducted a meal credit from Plaintiff's wages improperly, pursuant to FLSA § 203(m) and 12 NYCRR § 146-1.9, without regard to whether employees actually consumed the credited meals or not. FLSA Collective Plaintiffs and Class Members similarly had meal credits improperly deducted from their wages.

11

Defendants claimed a certain amount of money towards meal credit from Plaintiff for every week, but Defendants did not provide an adequate quantity of meals for all employees.

40.    Plaintiff frequently found that there was not enough food for everyone—especially for employees with later start times. Plaintiff estimates that about twice per week, he was not provided with a meal for his shift because all of the food was gone by the time that he arrived. Moreover, Plaintiff, FLSA Collective Plaintiffs, and Class Members were frequently not provided with a meal break or interrupted before being able to finish their meals. Despite the regular lack of sufficient food and time to eat, Defendants still deducted a meal credit from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members each day they worked.

41.    Defendants knowingly and willfully operated their business with a policy and practice of improperly deducting meal credits from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages.

## vi.    Call-In Pay Claims

42.    Plaintiff was frequently sent home early without the appropriate call-in pay premiums. The NYLL requires that if an employer cancels a scheduled shift the day-of or sends an employee home before they work at least three hours, then that employee is entitled to the difference between three hours of pay and the time that they actually worked. While employed by Defendants, Plaintiff was regularly sent home early or had his shifts cancelled on the same day. This was usually done as part of an effort by management to prevent too many people from reaching overtime hours in a given week although Plaintiff was also cut early or even upon arrival if traffic was really slow on a particular day.

43.     Defendants knowingly and willfully operated their business with a policy of sending Plaintiff home early or cancelling his shifts entirely without paying the proper call-in premiums.

### vii.     WTPA Violation Claims

44.     At all relevant times, Plaintiff and Class Members did not receive accurate wage statements from Defendants.

45.     In failing to provide proper wage statements, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Since the decision in *Guthrie v. Rainbow Fencing Inc.,* No. 23-350 (2d Cir. 2024), the Second Circuit has held that there is no categorical bar on Article III standing for WTPA claims. Instead of adopting the more extreme District Court approaches which were denying standing as to WTPA claims, in Guthrie the Second Circuit charted a middle course, "agree[ing] with those district courts that have held that a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." *Id.* at 308

46.     The Second Circuit specifically acknowledged the possibility that a "lack of [WTPA] notices and statements might impair an employee's ability to seek relief for violations they may not have information about." *Id.* at 310 (internal quotes and citations omitted). The Guthrie Court further stated that allegations asserting "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" properly state an injury sufficient to support standing. Here, Defendants' failure to provide proper wage statements listing the rate of pay and the actual hours worked allowed Defendants to hide their wrongdoing. Because Plaintiff and Class Members were unaware of how many hours

13

they were actually working, they were unaware that Defendants were committing wage theft and were therefore unable to contest Defendants' illegal actions.

47.     The failure to provide proper wage statements resulted in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

48.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with accurate wage statements, in violation of the NYLL.

### viii.    Plaintiff's Individual Retaliation Claims

49.     Defendants' policies caused a significant amount of friction with their employees. Plaintiff and other Subclass Members complained frequently about missing and withheld tips, as well as Defendants' refusal to provide easy and regular access to the tip sheets. Although many different Subclass Members made complaints over the years about Defendants' policies and practices, Plaintiff was one of the most vocal in their dissatisfaction. In response, Defendants retaliated against Plaintiff by firing him in response to specific complaints.

50.     Plaintiff was involved in a series of escalating complaints. He started complaining about tips, then became involved in an attempt to track amounts and totals for parties and shifts with other members of his shift. As it became more and more clear that Defendants were stealing tips, Plaintiff's complaints escalated in frequency and severity.

51.     As Plaintiff continued complaining to Defendants, he also experienced numerous episodes of discrimination and harassment (*infra*). One day, after yet another incident of discrimination, Plaintiff went to his manager and once again complained about his missing tips and also complained about the harassment and discrimination. Following that complaint,

14

Defendants sent him home upon or just before the start of his shift multiple times in the next few weeks. Finally, Defendants fired Plaintiff for an unrelated cause, which was clearly pretext given that nothing had changed in the intervening time except that he had complained more and with greater force.

52.     As a result of Defendants' retaliation, Plaintiff suffered from lost wages, anxiety, and past and future emotional distress.

53.     Defendants knowingly and willfully retaliated against Plaintiff for exercising his rights to complain about his employers' misconduct.

### ix.     Plaintiff's Unlawful Discrimination Claims

54.     Plaintiff RASHID is a Muslim man.

55.     Throughout his employment, on a daily basis, Plaintiff was subjected to sexual harassment and religious discrimination.

56.     Throughout Plaintiff's employment, Plaintiff was subjected to a hostile work environment, sexually harassed and religiously discriminated against by two (2) people with leadership roles at Defendants' Virgin Hotels New York; including, Nick, Defendants' sous chef, and Nick, Plaintiff's manager (collectively, the "Discriminators").

57.     Defendants' sous chef, Nick, regularly discriminated against Plaintiff based on his religion. Every day, Nick taunted Plaintiff RASHID about his food. Some of the phrases Nick has said to Plaintiff RASHID include: "Don't touch this pork or you'll go to hell because you're Muslim" and "Be careful if you smell too much like pork you will be sinning." He also frequently called Plaintiff RASHID "El Indio", which means the Indian in Spanish.

58.     Defendants' manager, Nick, discriminated against Plaintiff on the basis of his sex. One day, Nick unzipped his pants in front of Plaintiff RASHID and showed him his penis without

his consent, asking, "Do you want my meat?" In response, one of the cooks said "Oh yes, Mamun wants it! Give it to him!" Two (2) runners witnessed this interaction. No action was taken, and Plaintiff RASHID refrained from complaining in fear of retaliatory termination until he finally brought it up to manager John Jack as in conjunction with his wage and hour complaints.

59.    Defendants, collectively, subjected Plaintiff RASHID to a hostile work environment through their sexual harassment and/or religious discrimination.

60.    Plaintiff RASHID complained to John Jack, one of the Defendants' managers, about the sexual and religious discrimination she faced from each Discriminator, but nothing was ever done about it.

61.    There was nothing Plaintiff RASHID could do to stop this discrimination, especially given the workplace's hostile environment and toxic culture in which complaints or mere questions to management resulted in termination.

62.    As a result of Defendants' discrimination, Plaintiff RASHID suffered from lost wages, anxiety, and past and future emotional distress.

63.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

64.    Plaintiff realleges and incorporate all allegations in this Complaint as fully stated herein.

16

65. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

66. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

67. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

68. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper tips, due to an invalid tip pool.

69. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper tips, due to Defendants' illegal tip retention policy.

70. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, due to Defendants' invalid meal credit policy.

71. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, due to Defendants' timeshaving practices.

72. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation (including tips) paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

73.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their tips, when Defendants knew or should have known such was due.

74.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

75.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

76.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, unpaid gratuities, illegally retained gratuities, and liquidated damages.

77.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW
### ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

78.     Plaintiff realleges and incorporates all allegations in this Complaint as fully stated herein.

79.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

80.     Defendants willfully violated Plaintiff's and Class Members' rights by illegally adding non-tipped employees to their tip pool, thus illegally retaining their rightfully earned gratuities.

18

81.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to them for all hours worked due to a policy and practice of timeshaving.

82.     Defendants willfully violated Plaintiff's and Class Members' rights by illegally deducting meal credit from Plaintiff's and Class Members while not serving them meals twice a week.

83.     Defendants willfully violated Plaintiff's and Class Members' rights by illegally retaining their rightfully earned gratuities.

84.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them call-in pay premiums for shifts that were cancelled or from which they were sent home early.

85.     Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

86.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their illegally retained gratuities, meal credit damages, late payments of wages, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

## COUNT III

### DISCRIMINATION UNDER THE
### NEW YORK STATE HUMAN RIGHTS LAW

**(N.Y. Exec. Law § 292, *et seq*.)**
**(brought on Plaintiff RASHID's behalf only)**

87.     Plaintiff RASHID realleges and incorporates all allegations in this Complaint as fully stated herein.

88.     The New York State Executive Law § 296(1)(a) provides that:

19

"It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

89.    Defendants violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law §296, by engaging in discriminatory practices with respect to the terms, conditions, and privileges of their employment and subjecting Plaintiff to a hostile work environment by sexual harassment and discrimination based on religion.

90.    This discriminatory conduct was in willful disregard of the provisions of the NYSHRL.

91.    As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff RASHID suffered damages in the form of emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## COUNT IV

## DISCRIMINATION UNDER THE
## NEW YORK CITY HUMAN RIGHTS LAW

**(Administrative Code of the City of New York § 8-107 *et seq*)**
**(brought on Plaintiff RASHID's behalf only)**

92.    Plaintiff RASHID realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

93.    At all relevant times, Plaintiff RASHID was an employee within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

94.    Defendants operated a business that discriminated against Plaintiff RASHID in violation of the NYCHRL by discriminating against Plaintiff RASHID with respect to the terms,

20

conditions, and privileges of his employment because of his race, religion, language, and national origin in various ways, including but not limited to:

    a. Creating and fostering a hostile work environment based on Plaintiff's race, religion, language and national origin,

    b. Verbally offending Plaintiff through usage of derogation against his religion, race, language, and national origin, and

    c. Failing to take action in response to a complaint alleging discrimination.

95. Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff RASHID's protected rights under the NYCHRL.

96. As a result of Defendants' unlawful discriminatory practices, Plaintiff RASHID sustained injury, including economic damages, past wages, physical and emotional distress.

97. Due to Defendants' violations under the NYCHRL, based on discrimination, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) compensatory damages; (3) punitive damages; and (5) attorney's fees and costs.

98. Additionally, Defendants violated the NYCHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive and regular discrimination and sexual harassment in the form of comments and behavior directed towards Plaintiff RASHID.

99. As a direct and proximate result of said hostile work environment, Plaintiff RASHID suffered and continues to suffer actual damages in various ways, including but without limitation, mental anguish, and pain and suffering. Plaintiff RASHID seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## COUNT V

## RETALIATION UNDER THE FLSA

### (brought on behalf of Plaintiff RASHID only)

100.   Plaintiff realleges and incorporates all the above allegations of this Complaint as if fully set forth herein.

101.   At all relevant times, Plaintiff RASHID was an employee of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA.

102.   Section 15(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint […] under or related to this Act."

103.   As alleged herein, Plaintiff complained to Defendants regarding Defendants' unpayment of wages, retention of tips, and unsatisfactory time-shaving policies. In response to such complaints, Defendants terminated Plaintiff, in violation of Section 15(a)(3).

104.   Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

105.   As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of lost earnings and emotional distress. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorneys' fees and costs, as provided under the FLSA.

## COUNT VI

## RETALIATION UNDER THE NYLL

### (brought on behalf of Plaintiff RASHID only)

23

106.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

107.    At all relevant times, Plaintiff was an  employee of Defendants within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

108.    Defendants willfully violated the NYLL by retaliating against Plaintiff by discharging him for making consistent complaints about Defendants' labor law violations regarding unpaid wages, tip retention, and time-shaving.

109.    In response to such complaints, Defendants terminated Plaintiff in violation of Section 215 (a).

110.    Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or   limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (1) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer was engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.

111.    Defendants' conduct was in willful disregard of the provisions of the NYLL.

112.    Plaintiff suffered economic losses and emotional and mental distress as the result of their retaliatory termination by Defendants.

113.    As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to

24

be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees, and costs, as provided for under the NYLL.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, NYSHRL, and the NYCHRL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of disgorgement of all improperly distributed tips, due under the FLSA and the NYLL;

d. An award of disgorgement of all improperly retained and distributed gratuities, due under the FLSA and the NYLL;

e. An award of unpaid wages deducted under Defendants' invalid meal credit policy, due under the NYLL;

f. An award of unpaid wages deducted under Defendants' policy of timeshaving Plaintiff and Class Members;

g. An award of unpaid call-in pay premiums for shifts lasting less than three hours, due under the NYLL;

h. An award of all applicable damages to Plaintiff RASHID for Defendants' retaliation against him;

i.  An award of all applicable damages to Plaintiff RASHID for Defendants' violation of laws prohibiting race and sex discrimination;

j.  An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage statement requirements;

k.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

l.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

m.  An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

n.  Designation of Plaintiff as a Representative of the FLSA Collective Plaintiffs;

o.  Designation of this action as a class action pursuant to F.R.C.P. 23;

p.  Designation of Plaintiff as a Representative of the Class; and

q.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

26

Dated: April 1, 2026                                  Respectfully submitted,
      New York, New York

                                                    **LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By:    /s/ *C.K. Lee*
          C.K. Lee, Esq.

27